Filed 10/16/15  Moorcraft v. Diaz CA2/3
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| JAMES MOORCROFT,<br><br>      Plaintiff, Appellant, and<br>Cross-Respondent,<br><br>      v.<br><br>DANTE DIAZ,<br><br>      Defendant, Respondent, and<br>Cross-Appellant. | B258019<br><br>(Los Angeles County<br>Super. Ct. No. PC054299) |


APPEAL from a judgment of the Superior Court of Los Angeles County, James A. Kaddo, Judge.  Affirmed; cross-appeal dismissed as moot.

Tofer & Associates, PLC, Michael P. Green and Lourdes DeArmas, for Plaintiff, Appellant, and Cross-Respondent.

Neil, Dymott, Frank, McFall, Trexler, McCabe & Hudson, APLC, James A. McFall, Jarod A. Cauzza, and Christine Y. Dixon; Fidone & Motooka, LLP, Marjorie E. Motooka and Gary F. Fidone, for Defendant, Respondent, and Cross-Appellant.

## INTRODUCTION

Plaintiff James Moorcroft sued defendant Dante Diaz for, among other claims, strict liability under Civil Code section 3342, subdivision (a)[1] after Moorcroft and his dog were bitten by Diaz's dog on Diaz's property. Before opening statements were made to the jury, the trial court stated that it appeared that Moorcroft could not prevail on his claim for strict liability. In response to the court's statement, Moorcroft requested, and received, an opportunity to submit briefing on the applicability of the statute but did not object to the court resolving the issue. Thereafter, based on stipulated facts and after hearing the parties' arguments, the court ruled that Moorcroft could not prevail on his strict liability claim. The lawsuit proceeded to trial on Moorcroft's remaining claims and the jury rendered a verdict in Diaz's favor.

On appeal, Moorcroft contends the court lacked authority to dismiss his strict liability claim on its own motion. Alternatively, Moorcroft contends that even if the court could dismiss his claim on its own motion, the court erred in doing so because there was a factual dispute as to whether the evidence established he was lawfully on Diaz's property. In his cross-appeal, Diaz claims the court erred in granting Moorcroft's motion in limine to exclude requests for admissions that were deemed admitted against Moorcroft in a prior lawsuit. We affirm the judgment against Moorcroft and dismiss Diaz's cross-appeal as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Moorcroft's First Lawsuit*

In 2011, Moorcroft sued Diaz for claims arising out of a dog bite incident that occurred on Diaz's property. During discovery in that case, Diaz propounded on Moorcroft a request for admissions, requesting Moorcroft admit, among other things, that at the time he was attacked by Diaz's dog (1) he did not have permission to be on Diaz's property; (2) Diaz's dog was secured behind a wooden fence; and (3) Diaz had

---

[1] This statute imposes strict liability on a dog owner for a dog bite occurring while the person bitten was lawfully on the owner's property.

posted on his property a sign that read "Beware of Dog." Moorcroft failed to respond to Diaz's requests, and Diaz successfully moved to have the facts contained in the requests deemed admitted against him. Shortly after the requests were deemed admitted, Moorcroft filed a request for dismissal without prejudice. Diaz never challenged that dismissal.

2. *The Current Lawsuit*

In 2012, Moorcroft filed a new lawsuit against Diaz for strict liability, negligence, and liability for a dangerous animal arising out of the same dog-bite incident forming the basis for his first lawsuit. The complaint alleged the following: In January 2011, Moorcroft and his dog were lawfully on Diaz's property when Diaz's dog attacked Moorcroft and his dog. As a result of the attack, Moorcroft sustained physical and emotional injuries and his dog suffered physical injuries. Moorcroft sought damages, including medical expenses for himself and his dog.

A. *Moorcroft's Motion in Limine to Exclude His Prior Admissions*

In May 2014, Diaz filed a brief advising the trial court of the facts deemed admitted against Moorcroft in his prior lawsuit. Diaz argued Moorcroft should be collaterally estopped in the current lawsuit from relitigating the facts covered by those admissions. Diaz contended Moorcroft's lawsuit was improperly dismissed without prejudice after the facts were deemed admitted against Moorcroft. Diaz argued that because the dismissal of Moorcroft's prior lawsuit was improper, Moorcroft should not be allowed to avoid the preclusive effect of his admissions in the current lawsuit.

Several days before trial was set to begin in June 2014, Moorcroft filed a motion in limine requesting the court exclude his prior admissions at trial. Moorcroft argued collateral estoppel and res judicata did not apply to his admissions because his prior lawsuit did not result in a final judgment on the merits. Moorcroft also argued Diaz's request should be denied because Diaz never objected to, or otherwise challenged, the dismissal of his prior lawsuit. The court took Moorcroft's motion under submission.

3

On June 23, 2014, the court granted Moorcroft's motion in limine. The court found that under Code of Civil Procedure section 2033.410, subdivision (b),[2] Moorcroft's admissions were not admissible in his new lawsuit. Although the court acknowledged Moorcroft should not have been allowed to dismiss his prior lawsuit without prejudice after Diaz's requests for admissions were deemed admitted, it concluded Diaz forfeited any reliance on those admissions by failing to challenge Moorcroft's dismissal in the prior lawsuit or file a demurrer in the current lawsuit requesting dismissal of Moorcroft's new complaint.

B. *The Court's Ruling on Moorcroft's Strict Liability Claim*

Immediately after granting Moorcroft's motion in limine, the court informed the parties it intended to find Moorcroft could not prevail on his claim for strict liability. Specifically, the court stated it was inclined to find that, as a matter of law, Moorcroft did not fall within the scope of Civil Code section 3342 because he was not lawfully on Diaz's property when he was attacked by Diaz's dog.

Moorcroft's attorneys did not object to the court resolving Moorcroft's strict liability claim before trial. Instead, they argued only the merits of Moorcroft's claim and requested time to brief the issue of whether Diaz impliedly invited Moorcroft onto his property. The court deferred its ruling to the next day to allow the parties to submit briefs.

On June 24, 2014, Moorcroft submitted a brief addressing implied invitations and consent under Civil Code section 3342. Moorcroft argued he fell within the statute's scope because he had previously been invited onto Diaz's property for social gatherings and, on several occasions prior to the attack, he had used Diaz's trashcans when they were stored in Diaz's driveway. He also argued that because homeowners

---

**2** Code of Civil Procedure section 2033.410, subdivision (b) provides: "Notwithstanding subdivision (a), any admission made by a party under this section is binding only on that party and is made for the purpose of the pending action only. It is not an admission by that party for any other purpose, and it shall not be used in any manner against that party in any other proceeding."

4

have a reduced privacy interest under the Fourth Amendment to the United States Constitution in garbage containers placed near public streets, a homeowner who places his trashcans on the front of his property necessarily extends an implied invitation to the public to enter his property to use those trashcans.

Before the court issued its ruling, the parties stipulated to the following facts: On the day of the incident, Moorcroft was walking his dog on a six- to eight-foot leash on the street fronting Diaz's home. After his dog defecated on the street, Moorcroft walked up Diaz's driveway to dispose of his dog's waste in Diaz's trashcans, which were located next to the driveway, directly across from the gate to Diaz's backyard. While Moorcroft was using Diaz's trashcans, his dog strayed to the backyard gate. Diaz's dog, who at all times remained on the backyard-side of Diaz's gate, grabbed Moorcroft's dog through the bottom of the gate. When Moorcroft went to the gate to help his dog, Diaz's dog bit him. At no time during the incident was Diaz aware that Moorcroft and his dog were on his property.

After the parties stipulated to these facts, the court found that Moorcroft trespassed on Diaz's property because Diaz was not aware Moorcroft had entered his property to use the trashcans. Because Moorcroft trespassed on Diaz's property, he was not lawfully on the property under Civil Code section 3342 and could not prevail on a claim for strict liability. The court denied Moorcroft's request for a stay of trial.

C.     *The Trial on Moorcroft's Remaining Claims*

The case proceeded to a jury trial on Moorcroft's claims for negligence and liability for a dangerous animal.[3] After Moorcroft presented his case-in-chief, Diaz moved for nonsuit as to Moorcroft's remaining claims. The court granted the motion as to Moorcroft's claim for liability for a dangerous animal, and it denied the motion as to his claim for negligence. The jury found Diaz was not negligent and awarded Moorcroft no damages.

---

[3]     The transcript from the trial is not included in the record on appeal.

*DISCUSSION*

Moorcroft contends the trial court erred when, on its own motion, it effectively dismissed[4] his claim for strict liability. He challenges the court's ruling on procedural and substantive grounds. With respect to his procedural challenge, Moorcroft argues the court lacked authority to dispose of his strict liability claim on its own motion on one day's notice. He also contends that, even if the court could dismiss his claim on its own motion, the court erred in doing so because a factual dispute exists as to whether he was lawfully on Diaz's property, which should have been decided by the jury. In his substantive challenge, Moorcroft argues the court erred in dismissing his claim because the stipulated facts establish he was lawfully on Diaz's property.

1.      *Moorcroft Forfeited His Procedural Challenge*

To preserve an issue for appeal, a party ordinarily must raise an objection before the trial court. (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 948 (*K.C. Multimedia*).) The party challenging the court's ruling must provide the reviewing court with citations to the record demonstrating that an objection was raised. (*Ibid*.) If the party fails to demonstrate it raised on objection before the trial court, the reviewing court generally will not consider the issue on appeal. (*Ibid*.) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid*., citing *In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

Moorcroft forfeited his procedural challenge to the court's alleged dismissal of his strict liability claim because his attorneys never objected to the court's ruling on any procedural grounds. Rather, they devoted their entire argument to the substantive issue raised by the court.

---

[4]      The court never actually dismissed this claim. The unsigned minute order from June 24, 2014 only states that the court "finds that there is no implied or expressed consent and rules that Civil Code Section 3342 does not apply."

For example, when the court informed the parties it intended to resolve Moorcroft's strict liability claim against him before it reached the jury, one of Moorcroft's attorneys immediately launched into an argument about why Moorcroft was a proper plaintiff under the strict liability statute. Moorcroft's attorneys also never raised a procedural objection during the first day of the hearing. When they requested time to submit a brief addressing the court's concerns, Moorcroft's attorneys told the court they intended to address only the issue of whether Moorcroft had been invited onto Diaz's property, and the brief they submitted the next day did not raise any procedural objections. During the second day of the hearing, Moorcroft's attorneys continued to address only the merits of Moorcroft's claims. Even after the court ruled that Moorcroft could not present his strict liability claim to the jury, Moorcroft's counsel never raised a procedural objection and only sought clarification of the substantive grounds for the court's ruling.

In sum, because Moorcroft failed to object to the court's procedure, he forfeited his procedural challenge on appeal. (*K.C. Multimedia*, *supra*, 171 Cal.App.4th at pp. 948-951 [plaintiff forfeited its procedural challenges to the court's sua sponte dismissal of its claims before trial by failing to object to the court's procedure].) In any event, as we discuss below, any procedural error was harmless.

2. *Any Procedural Error in Resolving the Strict Liability Claim Was Harmless*

A. *The Court's Procedure Was Similar to a Motion in Limine Testing the Sufficiency of Moorcroft's Evidence or a Motion for Nonsuit*

Although the court did not state under what authority it disposed of or barred Moorcroft's strict liability claim, the court's procedure was akin to a motion in limine to test the sufficiency of Moorcroft's evidence or a motion for nonsuit. (See *K.C. Multimedia*, *supra*, 171 Cal.App.4th at pp. 945, 951-953 [analogizing the trial court's pretrial procedure of dismissing the plaintiff's claims on grounds raised in the defendant's trial brief as a motion in limine testing the sufficiency of the plaintiff's evidence]; *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 748 (*Atkinson*)

7

[characterizing the trial court's sua sponte dismissal of the plaintiff's claim before trial as a motion for nonsuit]; *Stein-Brief Group, Inc. v. Home Indemnity Co.* (1998) 65 Cal.App.4th 364, 369 [same].) While the court's procedure was irregular and not supported by express statutory authority, as the cases cited above show, it was not unprecedented.

" 'A court has inherent equity, supervisory and administrative powers, as well as inherent power to control litigation and conserve judicial resources.' [Citations.] Use of a motion in limine to test whether a complaint states a cause of action 'falls within these powers . . . . ' [Citation.]" (*K.C. Multimedia*, *supra*, 171 Cal.App.4th at p. 951.) By using a motion in limine in this way, the court can dismiss a claim on the pleadings or after reviewing the evidence. (*Amtower v. Photon Dynamics, Inc*. (2008) 158 Cal.App.4th 1582, 1594.) Where such an order is granted " 'at the outset of trial with reference to evidence already produced in discovery, [it] may be viewed as the functional equivalent of an order sustaining a demurrer to the evidence, or [a motion for] nonsuit.' [Citation.]" (*K.C. Multimedia*, *supra*, 171 Cal.App.4th at p. 952.)

" 'A motion for nonsuit is a procedural device which allows a defendant to challenge the sufficiency of plaintiff's evidence to submit the case to the jury. [Citation.]' " (*Atkinson*, *supra*, 109 Cal.App.4th at p. 747.) Typically, a motion for nonsuit cannot be brought until the plaintiff has presented an opening statement. (Code Civ. Proc., § 581c, subd. (a).) However, a premature motion for nonsuit will not be reversed if it is clear the plaintiff could not have prevailed on his dismissed claim even if he had made an opening statement or presented evidence to the jury. (*Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 114.)

" '[A] trial court may not grant a defendant's motion for nonsuit if plaintiff's evidence would support a jury verdict in plaintiff's favor.' [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded.' [Citation.]" (*Atkinson*, *supra*, 109 Cal.App.4th at p. 747.)

8

We will not reverse the court's judgment unless Moorcroft was prejudiced by the court's premature resolution of his strict liability claim. (Cal. Const., art. VI, § 13 [" 'No judgment shall be set aside . . . [in any cause] for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice' "]; *Atkinson*, *supra*, 109 Cal.App.4th at p. 749.) Accordingly, we must determine whether the court was correct in concluding that, as a matter of law, Moorcroft could not succeed on his claim under Civil Code section 3342.[5]

      B.      *Based on the Stipulated Facts, the Court's Ruling Was Correct*

Before reaching the merits of Moorcroft's strict liability claim, we reject Moorcroft's argument that a triable issue of fact exists as to his status on Diaz's property. As Moorcroft acknowledges in his opening brief, he stipulated to the set of facts upon which the court based its ruling. Because he did not object to the court's procedure, he is bound by that stipulation for the same reasons set forth above in our forfeiture discussion. Further, Moorcroft did not argue before the trial court, and he does not argue on appeal, that he could have introduced additional evidence demonstrating he was lawfully on Diaz's property. Moorcroft also has not supplied the reporter's transcript from the trial on his remaining claims, precluding us from determining whether he introduced additional evidence concerning his status on Diaz's

---

[5] Moorcroft relies on *Certain Underwriters at Lloyd's of London v. Superior Court* (1997) 56 Cal.App.4th 952 (*Lloyd's of London*) to argue the court committed reversible error by dismissing his strict liability claim on its own motion. That decision does not support his argument. *Lloyd's of London* addressed the type of evidence necessary to meet a defendant's burden of proof on summary judgment after the trial court denied the defendant's motion for summary judgment. (*Id*. at pp. 955-962.) The trial court did not dismiss any of the plaintiff's claims on its own motion. (*Id*. at pp. 954-955.) Although the Court of Appeal in that case acknowledged that a state trial court does not share a federal district court's authority to summarily adjudicate a plaintiff's claim on its own motion, it did so only to explain the differences between summary judgment motions in the state and federal courts. (See *Id*. at pp. 958-960.)

property at the time of the attack. Thus, we presume there was no dispute as to the facts upon which Moorcroft's strict liability claim was based.

"[T]he application of a statutory standard to undisputed facts is reviewed de novo." (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 212.) Accordingly, we independently review whether Moorcroft was lawfully on Diaz's property at the time he was bitten by Diaz's dog.

Civil Code section 3342, subdivision (a) provides in part: "The owner of any dog is liable for the damages suffered by any person who is bitten by the dog while . . . lawfully in a private place, including the property of the owner of the dog, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness. A person is lawfully upon the private property of such owner within the meaning of this section . . . when he is on such property upon the invitation, express or implied, of the owner." Thus, to establish he was lawfully on Diaz's property, Moorcroft must prove Diaz expressly or impliedly invited Moorcroft to enter his property. (Civ. Code, § 3342, subd. (a).)

Moorcroft does not dispute Diaz never expressly invited him to enter his property to use his trashcans or to enter the area by the gate to Diaz's backyard. Rather, he argues Diaz extended an implied invitation to enter his property by placing his trashcans next to his driveway. According to Moorcroft, once he entered Diaz's property to use the trashcans, he lawfully remained on the property by reason of necessity when he went to the backyard gate to help his dog. We disagree.

California courts have strictly construed Civil Code section 3342's requirement that a plaintiff must be invited onto the dog owner's property to prevail on a claim for strict liability. (See *Fullerton v. Conan* (1948) 87 Cal.App.2d 354, 358; see also 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1409, p. 833.) Cases addressing implied invitations under Civil Code section 3342 look to the dog owner's conduct and knowledge with respect to the plaintiff's presence on the owner's property. (See e.g., *Fullerton*, *supra*, 87 Cal.App.2d at pp. 356-358 [no implied invitation existed to enter backyard where the child plaintiff was bitten by the owner's dog when the

10

owner told the plaintiff's mother to not let her daughter go into the backyard]; *Bauman v. Beaujean* (1966) 244 Cal.App.2d 384, 387-388 [no implied invitation existed for the child plaintiff to enter the backyard where the dog was kept because the dog owner had never allowed the child to play in the backyard]; *Smythe v. Schacht* (1949) 93 Cal.App.2d 315, 319-320 [implied invitation existed where the dog owner was aware that the child plaintiff frequently played on the owner's property with the owner's child].)

In stipulating to the factual basis for the court's ruling, Moorcroft conceded that Diaz was not aware Moorcroft had entered his property to use his trashcans at the time of the attack. Moorcroft also does not claim Diaz was aware he had entered Diaz's property to use the trashcans on prior occasions. Moorcroft has cited no cases, and we have found none, in which an implied invitation to enter a dog owner's property exists where the owner was not aware of the plaintiff's presence on his property at the time the owner's dog attacked the plaintiff, and where the owner was not aware that the plaintiff had entered his property for the same purpose on prior occasions. It is for good reason that an implied invitation does not exist in such situations because such a rule would unreasonably expand a property owner's liability to, and responsibility for, unknown and unwanted entrants.

We decline to apply, as Moorcroft requests, case law holding that a homeowner has a reduced expectation of privacy under the Fourth Amendment in garbage containers placed for collection outside the curtilage of the home (see e.g., *California v. Greenwood* (1988) 486 U.S. 35, 37, 108 S.Ct. 1625, 100 L.Ed.2d 30) to find an implied invitation to enter a homeowner's property exists where the owner has placed his trashcans on the front of his property. Moorcroft fails to offer any convincing argument for why such an expansive rule should be created. As such, the trial court properly found Moorcroft did not lawfully enter Diaz's property to use Diaz's trashcans. Again, Moorcroft had never received Diaz's permission to enter Diaz's property for such a purpose, and the undisputed facts show Diaz was not aware Moorcroft was on his property at the time of the attack.

11

We also reject Moorcroft's argument that he was lawfully on Diaz's property at the time of the attack by reason of necessity. Moorcroft cites no authority supporting his argument that the privilege of necessity renders his initially unlawful entry on Diaz's property lawful under Civil Code section 3342. The only cases cited by Moorcroft apply the privilege of necessity to find warrantless searches reasonable under the Fourth Amendment or to find a person is not liable for destroying another person's property when it is necessary to prevent a public emergency. (See e.g., *People v. Parra* (1973) 30 Cal.App.3d 729, 731-732 [privilege of necessity made police officer's search of defendant's property lawful under the Fourth Amendment because officer entered property in response to reported burglary]; *People v. Roberts* (1956) 47 Cal.2d 374, 377 [police officers' warrantless entry into apartment was justified because they reasonably believed someone inside the apartment was in distress and in need of assistance]; *Surocco v. Geary* (1853) 3 Cal. 69, 72-75 [a defendant is not liable for destroying another person's property when it is necessary to prevent the spread of a fire that threatens nearby structures].) Quite simply, Moorcroft may not rely on the privilege of necessity because he was trespassing on Diaz's property *before* his dog strayed to Diaz's backyard gate and was attacked. (See *Parra*, *supra*, 30 Cal.App.3d at p. 733 [to rely on the privilege of necessity, the initial trespass must be "prompted by the motive of preserving life or property"].) Put another way, it was Moorcroft's trespass, and not any lawful activity, that created the need for Moorcroft to enter the area of Diaz's property where he was attacked by Diaz's dog. Accordingly, the trial court did not err in finding Moorcroft could not prevail on a claim for strict liability under Civil Code section 3342.

## *DISPOSITION*

The judgment is affirmed.  Diaz's cross-appeal is dismissed  as moot.  Each party shall bear his own costs on appeal.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

LAVIN, J.

WE CONCUR:

ALDRICH, Acting P. J.

JONES, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.